IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ANGELA CARTER,                          §
                                        §
          Plaintiff,                    §
                                        §
v.                                      §          CIVIL NO. H-08-2844
                                        §
MICHAEL J. ASTRUE,                      §
COMMISSIONER OF THE                     §
SOCIAL SECURITY ADMINISTRATION,         §
                                        §
          Defendant.                    §

**MEMORANDUM OPINION**

Pending before the court[1] are Plaintiff's Motion for Summary
Judgment (Docket Entry No. 13) and Defendant's Cross Motion and
Response to Plaintiff's Motion for Summary Judgment (Docket Entry
No. 14).  The court has considered the motions, all relevant
filings, and the applicable law.  For the reasons set forth below,
the court **GRANTS** Defendant's Cross Motion for Summary Judgment and
**DENIES** Plaintiff's Motion for Summary Judgment.

**I.  Case Background**

Plaintiff Angela Carter ("Plaintiff") filed this action
pursuant to 42 U.S.C. § 405(g) for judicial review of an
unfavorable decision by the Commissioner of the Social Security
Administration ("Defendant" or "Commissioner") regarding
Plaintiff's claim for disability insurance benefits under Title II

---

[1]    The parties consented to proceed before the undersigned magistrate
judge for all proceedings, including trial and final judgment, pursuant to 28
U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Docket Entry Nos. 10-
11, 12.

and supplemental security income benefits under Title XVI of the Social Security Act ("the Act").

## A.    Procedural History

Plaintiff filed for disability benefits on April 20, 2006, claiming an inability to work since February 3, 2006.[2]  After Plaintiff's application was denied at the initial[3] and reconsideration levels,[4] she requested a hearing before an Administrative Law Judge of the Social Security Administration ("ALJ").[5]  The ALJ granted Plaintiff's request and conducted a hearing in Houston, Texas, on November 6, 2007.[6]  After listening to testimony presented at the hearing and reviewing the medical record, the ALJ issued an unfavorable decision on December 12, 2007.[7]

On June 6, 2008, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Defendant.[8]  Having exhausted her administrative

_____

[2]    Transcript of the Administrative Proceedings ("Tr.") 101-107.

[3]    Tr. 77-84.

[4]    Tr. 86-89.

[5]    Tr. 94.

[6]    Tr. 12.

[7]    Tr. 9-22.

[8]    Tr. 1-3.

2

remedies,[9] Plaintiff filed this timely civil action pursuant to 42 U.S.C. § 405(g) for judicial review of the Defendant's unfavorable decision.

## B.   Factual History

### 1.   Plaintiff's Age, Education, and Work Experience

Plaintiff was born on April 6, 1962, and was forty-five years old at the time of the hearing before the ALJ.[10]  She has a tenth grade education with no further job, trade, or vocational training.[11]  Prior to the onset of her alleged disability, Plaintiff worked full time since 1985 at the Postal Service.[12]  During this period she also held two part-time jobs for about six months each, first at Eagle Logistics, entering numerical data, and then at a clothing company called Tempo, working on the sales floor.[13]

### 2.   Plaintiff's Testimony

At the hearing on November 7, 2007, Plaintiff testified about the physical problems she experienced and their effect on her life.[14]  She stated that she could not turn her neck completely to

---

[9]   See Harper v. Bowen, 813 F.2d 737, 739 (5th Cir. 1987), for a summary of the administrative steps a disability claimant must take in order to exhaust her administrative remedies.

[10]   Tr. 30.

[11]   Tr. 30.

[12]   Tr. 32-33.

[13]   Tr. 33.

[14]   Tr. 34-53.

the right to the same degree that she could to the left.[15]
Plaintiff also described feeling as if there were something on her
back pulling her to the ground.[16]   Plaintiff reported that her
doctors recommended neck surgery.[17]   She also stated that she
experienced neck pain that radiated down her right arm.[18]   To
alleviate the pain, she used therapy, heating pads, medications,
and patches.[19]

Plaintiff testified that she had surgery on her right shoulder
in June 2006 to repair the right rotator cuff but still experienced
certain shoulder limitations.[20]   These limitations included an
inability to lift her right arm over her head without the aid of
her left arm, an inability to reach in front of herself, an
inability to put keys in a door and turn the knob, and an inability
to securely hold anything in her right hand.[21]   Her right shoulder
still caused her pain.[22]   At the time of the hearing, she reported
needing treatment for her left shoulder because of a tear as a

---

[15]   Tr. 34.

[16]   Tr. 34.

[17]   Tr. 34-35.

[18]   Tr. 35.  Plaintiff is right-handed.  Tr. 35.

[19]   Tr. 36.  Her medications were Soma, Darvocet, Flexeril, Naprosyn, and Lortab.  Tr. 36.

[20]   Tr. 37.

[21]   Tr. 37.

[22]   Tr. 38.

4

result of overcompensating for her right shoulder's limitations.[23] That treatment included cortisone injections and planned physical therapy.[24]

Plaintiff testified that she underwent a carpal tunnel release on her right hand in October 2006, but even after the operation, she reported having no strength in her right hand.[25] Plaintiff stated that she had a limited ability to write, either because her hand would cramp or because she would simply drop the pen.[26] Plaintiff also stated that she could not use a keyboard with her right hand or hold a cup of coffee for fear of dropping it.[27] Her left hand was "all right" but was not as strong as it used to be.[28]

Plaintiff also testified that she suffered from Crohn's disease.[29] She reported that she occasionally had severe episodes; the last severe episode required a two-week hospital stay.[30] Plaintiff could not recall when that episode occurred but it was

---

[23]    Tr. 40-41.

[24]    Tr. 40-41.

[25]    Tr. 38-39.

[26]    Tr. 39.

[27]    Tr. 39.

[28]    Tr. 40.

[29]    Tr. 41.

[30]    Tr. 41.

prior to 2005.[31]  As a result of having Crohn's disease, she stated
that she now had to be very careful about what she ate, that she
controlled her symptoms with medication, and that she tried to
"temper" her mind to reduce a flare-up of symptoms.[32]  Plaintiff
reported having no other present limitations or symptoms related to
Crohn's disease.[33]

Plaintiff stated that she was able to wash her face and brush
her teeth but could not comb her hair. She required assistance from
her husband and daughter when bathing and dressing herself.[34]  Most
of the rest of the day she remained at home, sitting upright to
alleviate the pain with a pillow around her neck.[35]  She said that
her husband did the housework and the dishes, and her daughter
helped her with the laundry.[36]  Plaintiff reported that she had
taught her six-year-old "how to pretty much take care of herself."[37]
Plaintiff and her husband went shopping together, and Plaintiff was
able to drive.[38]

---

[31]    Tr. 41.  Notably the medical records do not include this hospital
stay.

[32]    Tr. 41.

[33]    Id.

[34]    Tr. 43, 52.

[35]    Tr. 43, 50-51.

[36]    Tr. 52.

[37]    Tr. 52.  This includes having taught her how to warm-up frozen
dinners because of Plaintiff's inability to do so herself.

[38]    Tr. 52.

Plaintiff also testified that she has had a number of cortisone injections in her hand and both shoulders which have not helped to alleviate the pain.[39]  Plaintiff testified having daily pain, primarily located in her neck and right shoulder that affected her ability to think, remember, and concentrate.[40] Plaintiff reported experiencing paralyzing flare-ups of pain about every three to four hours, which forced her to take frequent breaks to relax her muscles or take medication.[41]  On bad days, she could not get out of bed because the neck pain prevented her from moving.[42]  She also experienced involuntary movement of her right shoulder, index finger, and thumb.[43]  She planned to continue with her therapy and consult a chronic pain specialist.[44]

Plaintiff stated that she took medication three times a day and required additional pain medication at night.[45] She related that she could not rest at night and slept better sitting up rather than lying down.[46]  She also slept sporadically throughout the day for

---

[39]    Tr. 42.

[40]    Tr. 46-48.

[41]    Tr. 47.

[42]    Tr. 48.

[43]    Tr. 46-47.

[44]    Tr. 42.

[45]    Tr. 43.

[46]    Tr. 34.

up to thirty minutes at a time.[47]   Also, the pain medication made her feel as if she were not in control; she testified that she could not focus, became extremely sleepy, and woke up feeling like she had a hangover.[48]   Plaintiff testified that she did not believe she would be able to work safely without the ability to stop and take a nap after she took pain medication or Soma.[49]

Plaintiff reported that if she sat for too long her legs and feet would swell.[50]   She did not think she could stand for six hours out of an eight-hour work day because she would feel like "somebody was just pulling me down to the ground because of the gravity."[51] Plaintiff testified that, with normal breaks to move around and prevent her feet and legs from swelling, she could sit for four to five hours a day.[52]   She estimated that she could lift about ten pounds, but predicted that she would have trouble holding on to it for a long period of time.[53]   Plaintiff stated that she could use her right hand for about two hours a day, with breaks, and her left for about six hours a day, with breaks.[54]   She testified that she had balance problems and could not bend or stoop because of

---

[47]   Tr. 44.

[48]   Tr. 36.

[49]   Tr. 44.  Plaintiff takes Soma as a muscle relaxer.  Tr. 44.

[50]   Tr. 44.

[51]   Tr. 44-45.

[52]   Tr. 45.

[53]   Tr. 45-46.

[54]   Tr. 46.

disequilibrium and light-headedness.[55]

Plaintiff also testified that she was taking Cymbalta for depression, on her doctor's orders.[56] Her doctor requested that she see a psychiatrist, but she had not yet done so.[57] The depression left her with no desire to do anything except "give up" and an inability to think, concentrate, and perform tasks in a timely manner.[58] She also experienced self-isolation and crying spells several times a week.[59]

Plaintiff testified that her physical problems had started before the 2006 work injury, but she maintained her employment for fear that if she filed any kind of a claim she would be fired.[60]

### 3.   Plaintiff's Medical Record

Plaintiff dates her disability from an on-the-job injury on February 3, 2006,[61] but her medical records show that she has reported suffering from various musculoskeletal problems since at least 2000.[62] A cervical spine x-ray in that year showed mild joint space narrowing at C4-C5 and mild joint space narrowing and a

---

[55]   Tr. 46.

[56]   Tr. 48.

[57]   Tr. 48.

[58]   Id.

[59]   Tr. 48-49.

[60]   Tr. 51.

[61]   Tr. 342.

[62]   Tr. 318.

marginal osteophyte at C5-C6.[63]   Another x-ray from 2004 showed further problems at those same joint spaces: osteopenia, disc space narrowing, and posterior spondylosis.[64]   An x-ray of her right shoulder at that time showed osteopenia and degenerative changes.[65]

On February 1, 2005, medical records indicate the presence of neck and back pain and a history of Crohn's disease and insomnia.[66] Two weeks later, an MRI of Plaintiff's right shoulder revealed near complete fatty atrophy of the supraspinatus and infraspinatus muscle, which physicians diagnosed as end-stage myopathy, diffuse neuropathies, or brachial neuritis.[67]   Another MRI of her cervical spine on March 4, 2005, showed degenerative disc disease at C3-C4 through C6-C7 and a disc protrusion at C3-C4.[68]   On March 15, 2005, an EMG revealed radiculopathy originating at C5-C6.[69]   On March 16, 2005, Plaintiff complained of pain in her neck and shoulders and numbness in her right arm, hand, and fingers.[70]   Examination showed severe weakness in the upper right extremity in the C6 and/or C7

---

[63]     Tr. 318.

[64]     Tr. 321.

[65]     Tr. 317.

[66]     Tr. 155.

[67]     Tr. 165.

[68]     Tr. 187.

[69]     Tr. 181.

[70]     Tr. 168.

myotomes.[71]   An MRI at this time revealed only mild stenosis of the right C5-C6 neural foramen.[72]   On March 22, 2005, a myelogram showed a mild mass effect upon the C7 exiting nerve root on the left.[73]   At C5-C6, the myelogram revealed a mild mass effect upon the C6 exiting nerve root.[74]   The diagnosis was mild to moderate cervical spondylosis.[75]   Further examination showed compression of arterial flow to the right upper extremity when standing with arms in a neutral position.[76]

Plaintiff's neck, back, and shoulder problems continued, and, on April 13, 2005, she was given epidural steroid injections.[77] Throughout most of the rest of 2005, Plaintiff had pain management treatment and cervical epidural injections which helped to alleviate her neck and shoulder problems.[78]   She stopped these treatments due to other medical problems that led to a hysterectomy, but she returned to pain management treatment thereafter in December 2005.[79]

On February 3, 2006, Plaintiff's on-the-job injury occurred as

---

[71]    Tr. 168.

[72]    Tr. 168.

[73]    Tr. 184.

[74]    Tr. 184.

[75]    Tr. 186.

[76]    Tr. 174.

[77]    Tr. 169.

[78]    Tr. 225.

[79]    Tr. 221.

she was placing a large package of magazines into a bin and she felt a pop in her right shoulder.[80]  She went to the emergency room and was placed on medication.[81]  On March 3, 2006, approximately one month after her accident, Plaintiff was diagnosed as having a rotator cuff tear and impingement and, additionally, right carpal tunnel syndrome.[82]  Plaintiff underwent surgery to repair her torn rotator cuff on June 9, 2006.[83]  Plaintiff received three more cervical steroid injections that summer, on July 5, July 25, and August 1, 2006.[84]  Plaintiff continued to complain of right shoulder, neck, and back pain into 2007.[85]  On January 19, 2007, Plaintiff's physician reported that she could return to work, even though she had not reached maximum medical improvement.[86]  A followup evaluation on March 8, 2007, suggested that Plaintiff be placed on a physical therapy program with active exercises to improve her range of motion and strength.[87]

On September 26, 2007, a required medical evaluation was performed at the request of the Texas Department of Labor.  Grant

---

[80]     Tr. 342.

[81]     Tr. 342.

[82]     Tr. 193.

[83]     Tr. 204.

[84]     Tr. 272-74.

[85]     Tr. 257.

[86]     Tr. 264.

[87]     Tr. 257.

McKeever, M.D., ("McKeever") found that Plaintiff's complaints of pain, numbness and a lack of a range of motion were not fully supported by his physical examination.[88]   McKeever stated his belief that there was a psychophysiologic component to her complaints.[89] It was his opinion, however, that her symptoms must be addressed before she could be gainfully employed.[90]

Finally, Plaintiff's records reveal a history of Crohn's disease but no active treatment.   Notably, Plaintiff saw Glenn Davis, M.D. (Dr. Davis") on February 1, 2005, and complained of tension, stress, neck and back pain.   At that time she disclosed that she also had some abdominal pain but admitted that she had not been compliant with her medication for Crohn's disease and had not kept up with her follow-up appointments for treatment.[91]   On February 7, 2005, Plaintiff reported to Dr. Davis that her neck pain had improved but that she now had a sore throat.[92]   She also reported "some" diarrhea, which she attributed to the Crohn's disease.[93]   Other than the above, the medical records do not reflect any other symptoms or complaints related to Crohn's disease.

---

[88]   Tr. 345.

[89]   Tr. 346.

[90]   Tr. 345.

[91]   Tr. 155.

[92]   Tr. 157.

[93]   Id.

13

### 4.   Medical Expert Testimony

After reviewing Plaintiff's medical record and listening to her testimony, Albert Oguejiofor, M.D., the testifying medical expert ("ME") noted the following items from Plaintiff's medical file.[94] He mentioned that Plaintiff had a history of neck and shoulder problems dating back to at least 2000.[95]  An MRI after her work-related injury revealed tendonitis and rotator cuff problems.[96]  He noted that, in June 2006, she underwent routine rotator cuff repair on the right side with right shoulder decompression, but there was no evidence of any complications from the surgery.[97]  In October 2006, she underwent a carpal tunnel release.  Follow-up reports from these procedures showed: no evidence of any severe deformity in her right shoulder; no evidence of existing rotator cuff tear; some evidence of capsilitis,[98] for which physical therapy was recommended; and evidence of tendonosis again, but with no tears in the tendon.[99]  Finally, the ME saw Crohn's disease mentioned throughout her files, but without any documentation of treatment for

---

[94]     Tr. 53-63.

[95]     Tr. 54.

[96]     Tr. 54.  Tendonisis is tendon inflammation.  Tr. 54.

[97]     Tr. 54.

[98]     Capsilitis is inflammation around the shoulder that can lead to "frozen shoulder."  Tr. 54-55.

[99]     Tr. 54-55.

it or mention of symptoms of the disease.[100]

The ME next discussed Plaintiff's medical record in conjunction with the impairments listed in the regulations ("Listings").[101]  He determined that she did not meet Listing 1.02 for major dysfunction of her joint or joints; she did not meet Listing 1.04 dealing with major dysfunction of the spine; she did not meet Listing 11.14 for neuropathies, for her carpal tunnel syndrome; and she did not meet Listing 5.06 dealing with ulcerative colitis and other inflammatory bowel disorders for her Crohn's disease.[102]  He did not evaluate her under 12.04 for affective disorders under the psychiatric Listings because there was no record that she had seen a psychiatrist.[103]

The ME next rated Plaintiff's residual functional capacity ("RFC") as medium.[104]  Based on her medical record, he did not see any limitations in her reaching in all directions or in handling with gross manipulation, fingering, or fine manipulation.[105]  He did not see any limitations in her ability to feel, climb, balance,

---

[100]     Tr. 55.  Symptoms for Crohn's disease include abdominal pain, persistent diarrhea, persistent weight loss, bowel surgeries, and other extra-intestinal manifestations.  Tr. 55.

[101]     Tr. 55-56.  "Listing" refers to impairments listed in Appendix 1 of the Social Security Act regulations.  20 C.F.R. Pt. 404, Subpt. P, App. 1.

[102]     Tr. 55.

[103]     Tr. 56.

[104]     Tr. 56.

[105]     Tr. 56.

stoop, kneel, or crouch.[106]  He saw no evidence of complications from her rotator cuff repair or her carpal tunnel release, and no loss of muscle, muscle strength, or muscle sensation.[107]

The ME expressed reservations about two portions of the medical record, although he declined to specifically disagree with them.[108] First, an evaluation on September 26, 2007, performed in connection with her claim for workers' compensation benefits, noted that she had no range of motion in her affected joints because of pain.[109] The ME could not find objective evidence to support that claim of a functional limitations, although he did not deny that there could be an undocumented cause for them.[110]  Second, he discussed her medications, questioning the use of Soma and strong narcotics such as Vicodin Extra Strength for her musculoskeletal problems.[111]  Based on the record, he would have instead prescribed simple anti-inflammatory drugs and physical therapy.[112]

Finally, the ME stated that he disagreed with some of the physical limitations placed on the Plaintiff by her treating

---

[106]    Tr. 56.

[107]    Tr. 57.

[108]    Tr. 57-60.

[109]    Tr. 57-58.

[110]    Tr. 57-58.

[111]    Tr. 60.

[112]    Tr. 60.

16

physicians.[113]   The ME found that Plaintiff had a long history of problems prior to her work-related injury.[114]  He also noted that the surgeries for the small, partial tear in her right shoulder and for her carpal tunnel syndrome did not leave her with documented complications resulting in significant limitations.[115]  He believed that most of the record was consistent with her complaints of pain during her September 2007 evaluation, but that there was no objective evidence for her claimed physical limitations.[116]  Finally, the areas where she complained of pain and numbness did not tie in with any typical dissolution of the nerve.[117]

### 5.   Vocational Expert Testimony

After reviewing the file and listening to Plaintiff's testimony, the vocational expert ("VE"), Herman Litt, testified that Plaintiff's previous work as a mail handler, as she performed it, was done at the medium to heavy exertional levels where she would have to lift, on occasion, seventy pounds.[118]  He also testified that the Dictionary of Occupational Titles rated the same job as semiskilled and light in exertional level, because most of the work

---

[113]    Tr. 62-63.

[114]    Tr. 62.

[115]    Tr. 62-63.

[116]    Tr. 63.

[117]    Tr. 63.

[118]    Tr. 64.

17

done was performed at the light exertional level, even though at times some heavier work may have been required.[119]   Given the RFC assigned by the ME, the VE believed that Plaintiff could perform her past relevant work.[120]   He also opined that, if Plaintiff's limitations were found to be as severe as she testified, she could not perform her past relevant work, nor would she be able to perform any work in the sedentary, light, or medium levels of exertion in the national economy.[121]

## II.   Legal Standards

### A.   Standard of Review

This court's review of a final decision by the Commissioner denying disability benefits is limited to determining (1) whether substantial record evidence supports the decision and (2) whether the ALJ applied proper legal standards in evaluating the evidence. Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999).

If the findings of fact contained in the Commissioner's decision are supported by substantial evidence, they are conclusive, and this court must affirm.   Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).   Substantial evidence is described as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'"   Greenspan v. Shalala, 38 F.3d 232, 236 (5th

---

[119]      Tr. 64.

[120]      Tr. 65.

[121]      Tr. 65.

18

Cir. 1994) (citing <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)); it is "more than a mere scintilla, and less than a preponderance." <u>Spellman v. Shalala</u>, 1 F.3d 357, 360 (5th Cir. 1993). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. <u>Johnson v. Bowen</u>, 864 F.2d 340, 343-44 (5th Cir. 1988). Under this standard, the court must review the entire record but may not reweigh the record evidence, determine the issues de novo, or substitute its judgment for that of the Commissioner. <u>Brown</u>, 192 F.3d at 496.

**B.   Standard to Determine Disability**

In order to obtain disability benefits, a claimant bears the ultimate burden of proving she is disabled within the meaning of the Act. <u>Wren v. Sullivan</u>, 925 F.2d 123, 125 (5th Cir. 1991). Specifically, under the legal standard for determining disability, the claimant must prove she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can expect to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a); <u>see also</u> <u>Greenspan</u>, 38 F.3d at 236. The existence of such disability must be demonstrated by "medically acceptable clinical and laboratory diagnostic findings." 42 U.S.C. §§ 423(d)(3), (d)(5); <u>see also</u> <u>Jones v. Heckler</u>, 702 F.2d 616, 620 (5th Cir. 1983).

To determine whether a claimant is disabled under this standard, Social Security Act regulations ("regulations") provide that a disability claim should be evaluated according to a sequential five-step process:

(1) An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" will not be found to be disabled.

(3) An individual who meets or equals a Listing will be considered disabled without the consideration of vocational factors.

(4) If an individual is capable of performing the work he has done in the past, a finding of "not disabled" will be made.

(5) If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and RFC must be considered to determine if other work can be performed.

Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994); see also 20 C.F.R. § 404.1520.  The claimant bears the burden of proof on the first four steps of the inquiry, while the Commissioner bears it on the fifth.  Crowley v. Apfel, 197 F.3d 194, 198 (5th Cir. 1999); Brown, 192 F.3d at 498.  The Commissioner can satisfy this burden either by reliance on the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence.  Fraga v. Bowen, 810 F.2d 1296, 1304 (5th Cir. 1987).  If the Commissioner satisfies his step-five burden of proof, the burden shifts back to the claimant to prove she cannot perform the work

suggested.  <u>Muse v. Sullivan</u>, 925 F.2d 785, 789 (5th Cir. 1991). The analysis stops at any point in the process upon a conclusive finding that the claimant is disabled or not disabled.  <u>Greenspan</u>, 38 F.3d at 236.

### III.  <u>Analysis</u>

#### A.  The ALJ's Decision

In his formal decision, the ALJ first noted that Plaintiff had met the disability insured status requirement of the Act from the alleged onset date of disability through December 31, 2010.[122]  The ALJ then followed the five-step process outlined in the regulations, finding at the first step that Plaintiff had not engaged in substantial gainful activity since February 3, 2006.[123] At step two, the ALJ found that Plaintiff suffered severe impairments from 1) her injury to her right rotator cuff, post-surgery, 2) degenerative disc and joint disease in her cervical spine, and 3) carpal tunnel syndrome in her right arm, post-surgery.[124]  However, at step three, the ALJ concluded that none of her impairments were of a severity sufficient to meet or equal one of the Listings, and therefore she was not presumptively disabled under the Act.[125]

The ALJ then took into consideration the information contained

---

[122]    Tr. 14.

[123]    Tr. 14.

[124]    Tr. 14.   The ALJ also specifically concluded that Plaintiff's Crohn's disease and depression were not severe impairments.  Tr. 19.

[125]    Tr. 19.

in Plaintiff's medical records, as well as testimony presented at the hearing, and concluded at step four that Plaintiff retained an RFC to perform the full range of medium work.[126]  Specifically, the ALJ determined that Plaintiff was capable of lifting and carrying fifty pounds occasionally and twenty-five pounds frequently and could push and pull the same weight.[127]  He also determined that she could stand, walk, and sit for six hours in the usual work day, all with normal breaks.[128]  He found no other physical limitations or any limitations imposed by any mental impairment.[129]   Based on Plaintiff's RFC, the ALJ concluded that Plaintiff was capable of performing her past relevant work as a mail handler, a job that was performed at both medium and heavy exertional levels, as the Dictionary of Occupational Titles stated that most of the work was performed at the light level.[130]  Having concluded his analysis at step four, the ALJ found Plaintiff "not disabled" and accordingly denied her claim for a period of disability and disability insurance benefits under Title II and Title XVI of the Act.[131]

**B.    Summary of Parties' Arguments**

---

[126]    Tr. 19.

[127]    Tr. 19.

[128]    Tr. 19.

[129]    Tr. 19.

[130]    Tr. 21.

[131]    Tr. 22.

22

Plaintiff requests judicial review of the ALJ's decision to deny disability benefits.  In this motion for summary judgment, Plaintiff contends that the ALJ's decision is not supported by substantial evidence and that the ALJ did not follow proper legal procedures.  Plaintiff first contends that the ALJ erred as a matter of law at step three in his classification of Crohn's disease under the Listings.  Second, Plaintiff argues that, at step four, the ALJ erred as a matter of law and without substantial evidence in determining Plaintiff's RFC as medium.  Finally, Plaintiff argues that the ALJ erred at step four in his determination that Plaintiff could perform her past relevant work as a mail handler, without having substantial evidence to support his conclusion.

Defendant, on the other hand, contends that the ALJ employed proper legal standards in reviewing the evidence and that the ALJ's decision is supported by substantial evidence of record.  Defendant therefore maintains the ALJ's decision should stand.  The court will consider all arguments in turn.

## C.    Step Three Analysis of Impairment Due to Crohn's Disease

Plaintiff argues that the ALJ erred as a matter of law at step three in his determination by failing to analyze, or even reference, Listing 5.07, the Listing for regional enteritis.  She argues that Crohn's disease is recognized as a synonym for regional enteritis.[132]

---

[132]    Plaintiff cites to *Stedman's Med. Dictionary* 575 (26th ed. 1995).

Therefore, she concludes, in step four the ALJ did not give full effect to this impairment in his analysis and erred as a matter of law.

Defendant counters that one of Plaintiff's treating sources reported that she was not compliant with her prescribed method of treatment for Crohn's disease[133] and that a failure to follow the prescribed method of treatment can be considered by the ALJ under Villa v. Sullivan, 895 F.2d 1019 (5th Cir. 1990).

"For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  Sullivan v. Zebley, 493 U.S. 521, 530 (1990). The ALJ is responsible for making the determination whether a severe impairment meets or equals a Listing.  Soc. Sec. Ruling ("SSR") 96-6p.

Here, Plaintiff makes a fundamental error of law in her assertion that Listing 5.07 of the Act concerns regional enteritis.[134] Listing 5.07 states: "Short bowel syndrome (SBS), due to surgical resection of more than one-half of the small intestine, with dependence on daily parenteral nutrition via a central venous catheter."  20 C.F.R. Part 404 App. 1, § 5.07.  Clearly, Plaintiff

---

[133]     Tr. 157.

[134]     Plaintiff's error likely stems from a reading of disability determination under the Railroad Retirement Act, wherein Listing 5.07 specifically concerns regional enteritis.  20 C.F.R. Pt. 220, App. 1, 5.07.

does not suffer from SBS.

Moreover, the Code of Federal Regulations specifically lists Crohn's disease as falling under Listing 5.06.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 5.00(E)(1).  At the hearing, the ME specifically stated that "Crohn's disease is evaluated under 5.06, which deals with ulcerative colitis and other inflammatory bowel disorders."[135] Therefore, the ALJ did not err as a matter of law in conducting his evaluation of Crohn's disease under the requirements of Listing 5.06 as opposed to Listing 5.07.

The ALJ explicitly found that none of Plaintiff's impairments met or equaled a Listing,[136] and the court finds this determination to be supported by substantial evidence.  After listening to Plaintiff's statements and reviewing the medical record, the ME discussed several individual Listings and opined that none of Plaintiff's impairments met the criteria required by the Act.[137]  The ME also explicitly stated that, with respect to Listing 5.06, the medical record did not document:

> a flare-up of Crohn's disease or any complications that you can have with Crohn's disease in the form of abdominal pain, persistent diarrhea, persistent weight loss, bowel surgeries or any extra intestinal manifestations of Crohn's that you typically can have.[138]

---

[135]    Tr. 55.

[136]    Tr. 19.

[137]    Tr. 55.

[138]    Tr. 55.

25

Upon conducting its own review of the medical record, this court finds no factual reason to dispute the ME's assessment. Because Plaintiff has failed to present any evidence regarding the severity of her symptoms or treatment that was suggested or undertaken for her Crohn's disease, she cannot meet the requirements of Listing 5.06. The ALJ therefore did not err in his designation and analysis of Plaintiff's Crohn's disease.

**D.   Step Four Determination of Plaintiff's RFC**

Plaintiff next generally contends that the ALJ committed error both as a matter of law and on the sufficiency of the evidence in his analysis of Plaintiff's RFC. She also submits four specific arguments. First, Plaintiff argues the ALJ committed error by finding that Plaintiff's testimony lacked credibility with regard to her pain. Second, Plaintiff argues that the ALJ failed to give any reasons for rejecting the medical opinions of her treating physicians. Third, Plaintiff argues that the ALJ failed to take into account the effects of her medication, impairments, and pain on absenteeism. The court will consider each of these specific arguments in turn and then address Plaintiff's general contention.

**1.   Pain and Credibility**

First, Plaintiff argues that the ALJ erred by failing to give consideration to Plaintiff's subjective symptoms of pain when determining her RFC and that she lacked credibility with regard to the pain attributable to her orthopedic impairments.

26

### a.   Pain

The regulations explain that, when the medical evidence reveals a medically determinable impairment that could produce pain, the analysis is to focus on the intensity and persistence of the pain to determine how it limits the claimant's capacity for work.   20 C.F.R. § 404.1529(c); 20 C.F.R. § 416.929(c); see also Wren, 925 F.2d at 128.   In order to evaluate the intensity and persistence of pain, the ALJ considers all available evidence, including medical history, medical signs and laboratory findings, and statements of treating providers, and the subjective testimony of the claimant. 20 C.F.R. § 404.1529(c); 20 C.F.R. § 416.929(c).   The ALJ must also take into account the effects of pain medication on the claimant's ability to perform work tasks.   See Loza v. Apfel, 219 F.3d 378, 396-97 (5th Cir. 2000).   Although the ALJ is required to consider subjective evidence of pain along with other record evidence, he is ultimately responsible for making the determination of whether the pain is debilitating.   Wren, 925 F.2d at 128.

To prove disability resulting from pain, an individual must establish a medically determinable impairment that is capable of producing disabling pain.   20 C.F.R. § 404.1529(a); 20 C.F.R. § 416.929(a); see also Ripley v. Chater, 67 F.3d 552, 556 (5th Cir. 1995).   "Once a medical impairment is established, the subjective complaints of pain must be considered along with the medical evidence in determining the individual's work capacity."   Id.

27

Pain can constitute a disabling impairment.   See Cook v. Heckler, 750 F.2d 391, 395 (5th Cir. 1985).   However, the mere existence of pain is not an automatic ground for obtaining disability benefits.   Fortenberry v. Harris, 612 F.2d 947, 950 (5th Cir. 1980).   Pain constitutes a disabling condition only when it is "constant, unremitting, and wholly unresponsive to therapeutic treatment."   Selders, 914 F.2d at 618-19 (5th Cir. 1990)(quoting Harrell v. Bowen, 862 F.2d 471, 480 (5th Cir. 1988).

The ALJ gave considerable discussion to Plaintiff's allegations of pain in his opinion.   Besides his recitation of Plaintiff's medical history, he also specifically concluded that Plaintiff "has medically determinable impairments which plausibly could cause her the types of pain of which she complains, if not particularly likely to cause the intensive pain she asserts."[139]   He also pointed to the medical records which indicated that Plaintiff has complained "of pain at significant levels over an extended period of time, and she does have pain management and surgery and physical therapy."[140]   The ALJ clearly took Plaintiff's pain into account in his analysis of her RFC.

### b.   Credibility

Plaintiff argues that the ALJ committed error by finding the Plaintiff's testimony lacked credibility with regard to the pain

---

[139]   Tr. 20.

[140]   Tr. 20.

attributable to her orthopedic impairments and that a review of the record supports her allegations of pain and discomfort. Furthermore, Plaintiff argues that the ALJ failed to comply with the relevant regulations and Social Security Rulings when evaluating the credibility of her complaints relating to her symptoms and pain. Specifically, Plaintiff points to the following: "[A]n individual's symptoms, including pain, will be determined to diminish the individual's capacity for basic work activities to the extent that the individual's alleged functional limitations and restrictions due to symptoms can be accepted as consistent with the objective medical evidence and other evidence in the case record."[141]

"While an ALJ must consider an applicant's subjective complaints of pain, he is permitted to examine objective medical evidence in testing the applicant's credibility.  He may find, from the medical evidence, that an applicant's complaints of pain are not to be credited or are exaggerated."  Johnson v. Heckler, 767 F.2d 180, 182 (5th  Cir. 1985).  Additionally, the Fifth Circuit has held that an ALJ was correct in considering a claimant's ability to perform household chores when evaluating the credibility of her complaints.  See Vaughn v. Shalala, 58 F.3d 129, 131 (5th Cir. 1995).

Here, the ALJ thoroughly discussed the evidence presented,

---

[141]   Brief in Support of Plaintiff's Motion for Summary Judgment, Docket Entry No. 13, pp. 7-8; 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4); SSR 96-7p.

including Plaintiff's testimony, the ME's testimony, and the medical record, in drawing his conclusion that Plaintiff's allegations of severe pain lacked credibility.[142]  After reciting a thorough history of Plaintiff's medical treatment and complaints, the ALJ noted that, "[s]he testifies to very limited activities in her daily life, but without much specificity."[143]  The ALJ's decision also highlights assessments from the ME's testimony and State Agency medical examiners who advised that Plaintiff was capable of working.[144]  Finally, the ME explicitly opined that, while the record is certainly consistent with the presence of some of Plaintiff's pain, much of her subjective assertion of pain is not consistent with the objective medical evidence on file.[145]

Finding that the ALJ's evaluation of Plaintiff's subjective complaints is supported by substantial record evidence, the court must defer to the ALJ's assessment. Villa, 895 F.2d at 1024.  This court is simply not at liberty to overrule the ALJ's evaluation of Plaintiff's credibility. See Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001); Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991); Villa, 895 F.2d at 1024.  Although it is quite possible that Plaintiff's ability to do some types of work may be limited by

---

[142]   Tr. 21.

[143]   Tr. 21.  In addition, the record states that Plaintiff drives when she and her husband go shopping, and she can do laundry with the help of her daughter.  Tr. 52.

[144]   Tr. 19.

[145]   Tr. 19.

her experiencing some pain, the inability to work without some pain will not in and of itself render her disabled. See Chambliss, 269 F.3d at 522; Richardson v. Bowen, 807 F.2d 444, 448 (5th Cir. 1987). The regulations state that a claimant's alleged limitations and restrictions need only be accepted to the extent they "can be accepted as consistent with the objective medical evidence."[146] Because the ALJ determined that Plaintiff lacked credibility precisely because her testimony was not consistent with the medical record, the ALJ did not err as a matter of law in assessing her lack of credibility.

### 2. Treating Physicians' Opinions

Plaintiff next contends that the ALJ erred as a matter of law by discrediting the conclusions of her treating physicians without identifying the reasons why. Specifically, Plaintiff argues that, while the ALJ referenced the physicians' names in his opinion, he failed to comply explicitly with 20 C.F.R. § 404.1527 by "failing to provide any reason whatsoever for his obvious rejection of these treating physicians' opinions."[147]

The Defendant counters that the opinions of Plaintiff's treating physicians were not rejected. He argues that the ALJ accepted the testimony of the ME in conjunction with, not upon rejection of, the medical reports of all of Plaintiff's treating

---

[146]   20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4); SSR 96-7p.

[147]   Brief in Support of Plaintiff's Motion for Summary Judgment, Docket Entry No. 13, p. 9.

physicians.   Specifically,  the  Defendant  argues  that  the  ALJ's
decision stated that Plaintiff has impairments that plausibly could
cause  her  the  types  of  pain  of  which  she  complains;  that  State
Agency  physicians  reported  that  the  objective  evidence  did  not
support the level of pain alleged by Plaintiff; and that the ALJ's
decision was not contrary to the opinions of Plaintiff's treating
sources.   The court agrees with the Defendant.

        "A treating physician's opinion on the nature and severity of
a  patient's  impairment  will  be  given  controlling  weight  if  it  is
well-supported  by  medically  acceptable  clinical  and  laboratory
diagnostic techniques and is not inconsistent with other substantial
evidence."      Newton  v.  Apfel,  209  F.3d  448,  455  (5th  Cir.
2000)(internal quotations omitted).  However, the ALJ ultimately may
give  less  weight  to  the  medical  opinion  of  any  physician  when  his
statements  are  conclusory,  unsupported,  or  otherwise  incredible.
Greenspan, 38 F.3d at 237.  When deciding to do so, the ALJ must
indicate the specific reasons for discounting the treating source's
medical  opinion.   See SSR 96-2p.

        Even  though  medical  opinion  and  diagnosis  of  a  treating
physician should be afforded considerable weight, "the ALJ has sole
responsibility  for  determining  a  claimant's  disability  status."
Martinez v. Chater, 64 F.3d 172, 176 (5th Cir. 1990)).  A medical
source's  statement  that  the  claimant  is  "disabled"  or  "unable  to
work" does not mean the Commissioner will determine the claimant is,

in fact, disabled.  <u>Spellman v. Shalala</u>, 1 F.3d 357, 364 (5th Cir. 1993)(citing 20 C.F.R. § 404.1527(e)(1)); <u>see also</u> 20 C.F.R. § 416.927(e)(1).  The determination of a disability is not a medical opinion entitled to deference, but a legal conclusion within the Commissioner's scope of authority.  <u>Frank v. Barnhart</u>, 326 F.3d 618, 620 (5th Cir. 2003).

Here, contrary to Plaintiff's assertion, the ALJ specifically recounted his reasons for the rejection.[148]  He declined to follow the opinion of McKeever, because McKeever's examination was solely for the purpose of determining whether there was a compensable impairment under the workers' compensation laws.[149]  McKeever also opined that he believed Plaintiff's complains of pain to be not wholly supported by the physical examination.[150]  Furthermore, the ALJ declined to follow the opinions of those physicians who relied on Plaintiff's self-reports of her pain for their evaluations for the same reasons he discounted Plaintiff's credibility.[151]  The ALJ concurred with her physicians that her medically determinable impairments could plausibly cause her the types of pain of which she complained, although he believed they were unlikely to cause her the

---

[148]  Tr. 20.

[149]  Tr. 20.  McKeever's specific conclusion was that, "At the present time, this examinee in my opinion is not able to be gainfully employed in any capacity.  Although I feel there is a psychophysiologic component to her complaints and subjective physical findings do not substantiate her complaints."  Tr. 345.

[150]  Tr. 345.

[151]  Tr. 20.

intensive pain which she asserted in her testimony and may not have been caused directly by her impairments.[152]   At least one of her physicians believed that, as of January 19, 2007, Plaintiff could return to work even though she had not reached maximum medical improvement.[153]   Finally, the ALJ noted that the opinions of some of her physicians were conclusory and unsupported by the objective medical record, and thus need not be given controlling or great weight.[154]

The ALJ, rather than rejecting outright the opinions of Plaintiff's treating physicians, actually agreed with Plaintiff's physicians that her medically determinable impairments could plausibly produce her alleged symptoms.[155]   He also specifically outlined his reasons for not giving controlling or great weight to their opinions.[156]   Therefore, the ALJ did not err as a matter of law in his analysis of her treating physicians' opinions.

### 3.   Absenteeism

---

[152]    Tr. 20.  Specifically, the ALJ noted that the degenerative diseases affecting her spine would not cause her the intense pain of which she complained; that her carpal tunnel syndrome complaints ceased in the record after her surgery; and that her neck and shoulder pain could be caused by poor shoulder mechanics as opposed to her impairments, as believed by one of her treating physicians, Lubor Jarolimek, M.D.  Tr. 20 (citing to Tr. 229-230).

[153]    Tr. 264.

[154]    Tr. 20.  Specifically, the ALJ noted that her actual cervical spine abnormalities were not significant; that she ceased treating her neck and shoulder impairments when she had her hysterectomy; that her examinations for brachial plexus injury were negative; and that there was no workup for reflex sympathetic disorder.  Tr. 20-21.

[155]    Tr. 21.

[156]    Tr. 21-22.

Plaintiff next asserts that the ALJ erred as a matter of law because a correct RFC analysis must include consideration of her claim that she would be absent from the workplace an inordinate amount of time due to physical or mental impairments and due to the treating regimens of such impairments.

The Fifth Circuit has explicitly rejected the contention that the ALJ "must in every decision articulate a separate and explicit finding that a claimant can maintain a job on a sustained basis." Castillo v. Barnhart, No. 05-50693, 2005 WL 2675002, at *2 (5th Cir. Oct. 20, 2005)(unpublished)(citing Frank v. Barnhart, 326 F.3d 618, 619 (5th Cir. 2003))("Usually, the issue of whether a claimant can maintain employment for a significant period of time will be subsumed in the analysis regarding the claimant's ability to obtain employment.").  For separate consideration to be appropriate, the claimant's physical ailment, by its nature, must "wax and wane" in its manifestation of disabling symptoms.  Dunbar v. Barnhart, 330 F.3d 670, 672 (5th Cir. 2003)(quoting Frank, 326 F.3d at 619).  A separate finding regarding Plaintiff's ability to maintain employment is not necessary "[a]bsent evidence that a claimant's ability to maintain employment would be compromised despite his ability to perform employment as an initial matter, or an indication that the ALJ did not appreciate that an ability to perform work on a regular and continuing basis is inherent in the definition of RFC." Dunbar, 330 F.3d at 672.

In addition to Plaintiff's medical records and witness testimony, the ALJ called a VE to determine an RFC that incorporated those disabilities and limitations recognized by the ALJ.[157]   When the ALJ finished questioning the VE, Plaintiff's attorney had an opportunity to offer any corrections or pose additional limitations to the hypothetical questions considered.   See Boyd v. Apfel, 239 F.3d 698, 706-07 (5th Cir. 2001).   Plaintiff's attorney offered several additional limitations, but none to suggest that Plaintiff must be absent from the workplace for any treatment regimen.[158] Plaintiff offered no evidence that her condition "waxed and waned" in frequency or intensity such that her ability to maintain employment was not adequately taken into account in her RFC determination.[159]

The court finds no reason to disturb the ALJ's determination based on speculative absenteeism after considering all of the other evidence in the record, including the testimony of the VE.

**4.   Overall Determination of Plaintiff's RFC**

Finally, Plaintiff argues that the ALJ erred by failing to give adequate consideration to all of Plaintiff's impairments and

---

[157]     Tr. 63-70.

[158]     Tr. 67-69.

[159]     The ALJ noted that, from a late exhibit handed to him the day of the hearing, Plaintiff's physician Anjali Jain, M.D., opined that Plaintiff would miss more than four days of work per month.   Tr. 20.   This exhibit, inexplicably, did not become part of the record.   However, by reference to this material in his opinion, it is evident that the ALJ did not neglect to consider the effect of absenteeism in his determination of Plaintiff's RFC.   Tr. 20.

subjective symptoms of pain in determining her RFC.  Plaintiff further alleges that the ALJ's RFC determination that she retains the exertional capacity to perform the full range of medium work is not based upon substantial evidence and does not apply the proper legal standards required by SSR 96-8p.

SSR 96-8p provides in-depth guidelines describing the various exertional and nonexertional factors which should figure in the ALJ's determination.  20 C.F.R. § 416.967 provides that "[m]edium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary and light work."  The Fifth Circuit largely uses the same definition, with interpolations from SSR 96-8p, and describes the various functions required for normal work activities, including exertional factors like "sitting, standing, walking, lifting, carrying, pushing, and pulling.  Each function must be considered separately." Myers v. Apfel, 238 F.3d 617, 620-21 (5th Cir. 2001). Myers also held that, when making an RFC determination for an SSI claimant, an ALJ must perform a function-by-function assessment of a claimant's capacity to perform sustained work-related physical and mental activities.  238 F.3d at 620-22.

The ALJ's RFC determination here was supported by substantial evidence and satisfies the standards announced in Myers.  The ALJ based his decision in part on the medical reports of Eugenia

37

Goodman, M.D., and Terry Collier, M.D., which contain general evaluations of Plaintiff's mobility and a function-by-function analysis of the impact of her impairments on her ability to perform various tasks.[160] The ALJ determined that Plaintiff could lift and carry fifty pounds occasionally and twenty-five pounds frequently, while pushing and pulling the same, and that she could stand, could walk, and could sit for six hours in the usual work day, all with normal breaks.[161] These determinations are supported by Plaintiff's testimony that she did not have any problems with prolonged standing and that she could sit for four to five hours a day with breaks to prevent her legs and feet from swelling.[162] The ALJ also stated:

> [S]ignificantly, I note the claimant had very similar complaints before the injury, or reported injury, from which she dates her disability - yet she worked with those impairments for a number of years. The injury seems likely to have caused her rotator cuff impairment - but that was surgically repaired, and successfully so, from the medical evidence. That repair left the claimant where she was before the injury - and she was able to work before the injury. I see no medical evidence of any significantly medically determinable impairment after the repair as compared to before the February 2006 incident.[163]

While working at the post office before her 2006 injury, she could consistently pick up about seventy pounds, unload sacks of mail, and

---

[160]   Tr. 19, 195-202, 220.

[161]   Tr. 19.

[162]   Tr. 44.

[163]   Tr. 19.

sort mail.[164]  The medical reports, cited in conjunction with the ALJ's own appraisal of Plaintiff's testimony and review of the record, are supported by substantial evidence and satisfy the <u>Myers</u> standard.  <u>See</u> <u>Beck v. Barnhart</u>, 205 Fed. Appx. 207, 213 (5th Cir. 2006) (stating that reliance upon medical reports in conjunction with other evidence satisfies the <u>Myers</u> standard).

**E.   Step Four Determination that Plaintiff May Perform Her Past Relevant Work**

    **1.   Physical Impairments**

Plaintiff first contends the ALJ erred by concluding that Plaintiff was able to perform her past work as a mail handler without considering the effects of all of her physical impairments. The court disagrees.

During the November 2007 hearing before the ALJ, the ME testified that Plaintiff was able to perform medium work without restrictions.[165]  Specifically, the ME opined that Plaintiff's record supported no limitations in directional reaching, handling with gross manipulation, fingering, or fine manipulation.[166]  The record was also empty of limitations regarding feeling, climbing, balancing, stooping, kneeling, and crouching.[167]  Consistent with the opinions of the physicians for the State Agency, the ME concluded

---

[164]    Tr. 31.

[165]    Tr. 56-58.

[166]    Tr. 56.

[167]    Tr. 56.

39

that Plaintiff was able to perform medium work.[168]

At the end of the ME's testimony, the VE likewise testified that Plaintiff was able to return to work as a mail handler based on the ME's conclusions.[169]  The VE opined that even at the light level there were about 500 such jobs regionally and 135,000 such jobs nationally.[170]  Even if full credibility were given to the Plaintiff's ability to use her hands for only part of the day and that she could not work at a production pace because of her pain and need to rest, the VE suggested that Plaintiff could work some jobs, such as an information clerk, receptionist, or ticket seller, of which thousands of jobs exist nationally.[171]

The ALJ properly relied on the ME's and VE's testimony regarding the physical demands of Plaintiff's past relevant work when he concluded that Plaintiff was capable of working as a mail handler. See, e.g., Sanchez v. Astrue, 265 Fed. Appx. 359, 361 (5th Cir. 2008) (relying on testimony of a medical expert and a vocational expert in finding that claimant was capable of performing his past relevant work).  Consequently, Plaintiff's argument is rejected.

### 2.   Medication

Second, Plaintiff argues that the ALJ failed to consider the

---

[168]   Tr. 56, 195-202, 220.

[169]   Tr. 65.

[170]   Tr. 66.

[171]   Tr. 68, 70.

effect of medication on Plaintiff's ability to perform her past work as a mail handler.  Specifically, Plaintiff argues that the ALJ did not properly weigh her subjective complaints of being drowsy and other medication side-effects in determining her alleged disability.

The ALJ must take into account the effects of pain medication on a claimant's ability to perform work tasks.  See Loza, 219 F.3d at 396-97.  Sources used to establish whether a claimant has a medical impairment should include evidence from acceptable medical sources.  See 20 C.F.R. § 404.1513; 20. C.F.R. § 416.913; Houston v. Sullivan, 895 F.2d 1012, 1016 (5th Cir. 1989).  The medical evidence provided does not show that Plaintiff was suffering from any of her medications' potential side-effects or how serious the effects were.  The only testimony offered was Plaintiff's own testimony.[172]  This testimony is undermined by the medical reports, which do not contain any mention of Plaintiff's difficulties with her medication.  In these reports, there is substantial evidence to support the ALJ's determination that any impairments caused by the medication were at the most moderate and were properly accounted for in the RFC.[173]

Credibility determinations are generally entitled to great deference, and in this case, the court finds that the ALJ's credibility determination is supported by substantial evidence.  See

---

[172]     Tr. 36, 44.

[173]     Tr. 21.

41

<u>Newton</u>, 209 F.3d at 459.

**F.   Defendant's Motion for Summary Judgment**

Defendant asserts in his motion that the ALJ's decision should be affirmed because the ALJ properly determined Plaintiff was never under a disability.

The court recognizes the seriousness of Plaintiff's medical conditions.   However, the court must review the record with an eye toward determining only whether the ALJ's decision is supported by more than a scintilla, but less than a preponderance of evidence. <u>See Carey</u>, 230 F.3d at 135.   The court finds more than a scintilla of evidence in support of the ALJ's decision.   Therefore, the court cannot overturn the decision of the ALJ, who is given the task of weighing the evidence and deciding disputes.   <u>See Chambliss</u>, 269 F.3d at 522; <u>Carrier</u>, 944 F.2d at 247.

For the reasons stated above, the court finds Defendant satisfied his burden.   As a result, the ALJ's decision finding Plaintiff not disabled[174] is supported by substantial record evidence.   The court also agrees with Defendant that the ALJ applied proper legal standards in evaluating the evidence and in making his determination.   Therefore, Defendant's motion for summary judgment is granted.

**IV.   <u>Conclusion</u>**

Based on the foregoing, the court **GRANTS** Defendant's Cross

---

[174]    Tr. 21.

Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

SIGNED in Houston, Texas, this <u>1st</u> day of September, 2009.


Nancy K. Johnson
United States Magistrate Judge